UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                  :
JANE DOE,                                         :
                                                  :        13 Civ. 6287 (PAE)
                              Plaintiff,          :
                                                  :        OPINION & ORDER
              -v-                                 :
                                                  :
DELTA AIRLINES, INC.,                             :
                                                  :
                              Defendant.          :
                                                  :
------------------------------------------------------------------X

```
┌──────────────────────────────┐
│ USDC SDNY                     │
│ DOCUMENT                      │
│ ELECTRONICALLY FILED          │
│ DOC #:_____                 │
│ DATE FILED: 2/25/15           │
└──────────────────────────────┘
```

PAUL A. ENGELMAYER, District Judge:

Defendant Delta Airlines, Inc. ("Delta") moves for discovery sanctions against plaintiff

Jane Doe, under Federal Rule of Civil Procedure 37(b)(2), based on Doe's violations of multiple

orders that the Court issued, directing her to produce certain medical records and releases. Doe

opposes the motion for sanctions, contending that her refusal to comply with the Court's orders

was justified and, in any event, not in bad faith.

For the reasons set forth below, Delta's motion for monetary sanctions is granted, but its

motion for terminating sanctions is denied.

I.      **Background**[1]

        A.      **Factual Background**

        This sanctions motion arises from a pending lawsuit that Doe (whom the Court has

permitted to proceed pseudonymously) has brought against Delta. *See* Dkt. 1 ("Complaint").

Doe, a New York resident, alleges as follows:

---

[1] The Court recounts Doe's factual allegations as context for the pending motion. The Court also
draws on the parties' pleadings and briefs. Except where specifically referenced, no further
citation to these documents will be made.

On September 8, 2012, Doe was a first-class passenger on a Delta flight scheduled to leave Reagan National Airport, in Washington, D.C., at 3 p.m., bound for LaGuardia Airport in New York.  At about 2:30 p.m., Doe boarded the aircraft.  Due to bad weather, the flight was delayed and returned to the boarding gate at about 4:30 p.m.  At that time, Doe and the other passengers disembarked, and were told by a Delta gate agent to remain in the immediate vicinity of the gate to facilitate re-boarding when the weather cleared.  The agent suggested that the passengers wait at the restaurant next to the boarding gate.

Doe alleges that she went to the restaurant and ordered food and drink.  During the 3.5-hour delay, Doe returned to the boarding gate every 20 to 30 minutes to ask about the flight's status.  Delta gate agents told her she would have a first-class seat on the next available flight. At about 7 p.m., the passengers from the delayed flight were directed to proceed to a different boarding gate.

Doe alleges that she went to the newly assigned boarding gate, and approached a male Delta gate agent to confirm that passengers from the 3 p.m. flight would have priority in boarding and that that flight's first-class passengers, like her, would retain their first-class seats. According to Doe, the agent rudely responded that he would decide who would be boarded on the next flight.  Doe, not wanting to argue with the agent, turned and walked away.  As she walked away, the agent grabbed her shoulder from behind, spun her around, and accused Doe of being intoxicated.  Doe denied the allegation, directed the agent to talk to the waitress at the restaurant where she had been served dinner, and continued to walk away.

Thereafter, Doe alleges, passengers began boarding the 7 p.m. flight.  However, when Doe attempted to board, the male Delta agent told her to stand to the side.  Doe complied, and after a few minutes, was told to turn around.  Two law enforcement officers were present, and

2

the male Delta agent told the officers, "[T]his is the one," pointing to Doe.  The officers then handcuffed Doe, and led her away from the Delta terminal.  Doe alleges that she was arrested and incarcerated for about eight hours before she was released.

### B.   Relevant Procedural History

On September 6, 2013, Doe filed a Complaint in this Court, claiming false arrest, malicious prosecution, defamation and slander, battery, and negligence.  Dkt. 1.  On December 5, 2013, Delta answered, stating, among other things, that Doe's own negligence had been a cause of the altercation.  Dkt. 7 ("Answer").  Delta also reserved the right to assert additional defenses based on its investigation and discovery.  *Id.* ¶ 72.

In December 2013, discovery began.  *See* Dkt. 14.  As recounted more fully immediately below, Delta, based on information obtained during Doe's deposition, sought various medical and pharmaceutical records from Doe.  Delta also sought executed releases permitting Delta to receive such records from Doe's medical providers.  Doe failed to produce the requested medical records and releases, leading the Court to issue a series of six orders, each directing Doe to produce these documents, on an attorneys'-eyes-only basis.  These orders, and the circumstances leading to them, are recounted in detail in the following section.

On July 22, 2014, after the Court had issued the third such order, Delta moved for sanctions based on Doe's repeated failure to comply with the Court's orders.  Dkt. 55, 57 ("Def. Br.").  Delta argued that Doe's conduct was willful and in bad faith, and that dismissal of the Complaint was necessary because her failure to produce the requested materials had "severely prejudiced Delta in the defense of this action, and any lesser sanction would prove ineffectual."  Def. Br. 10–11.  Delta also sought an award of attorney's fees and costs from the inception of this action, again, based on Doe's non-compliance.  *Id.* at 13–14.  On July 29, 2014, Doe

responded, arguing that she was justified in disobeying the Court's orders, including on grounds of privilege.  Dkt. 61 ("Pl. Br."), at 11.[2]  Doe alternatively stated that she would provide the requested records and releases after the parties entered into a confidentiality agreement.  *Id.*  On July 31, 2014, Delta filed a reply, Dkt. 64 ("Def. Reply Br."), accusing Doe of bad faith, on the grounds that she had earlier failed to submit a proposed confidentiality order, as the Court had directed her to do during a June 5, 2014 telephonic conference.

Delta's motion for sanctions remains pending.  As more fully developed below, Doe produced the requested records and releases only after the Court had convened an in-person conference—at which Doe's counsel admitted that there was no bona fide basis for Doe not to comply with these orders—and had issued a sixth order demanding compliance.

### C.  Details of the Court's Discovery Orders Directed to Doe

The following is a history of the relevant discovery disputes and the Court's orders.

#### 1.  June 9, 2014 Order

On March 21, 2014, Doe, during her deposition, stated that, before her arrest, she had taken one pill of Flexeril[3] and consumed two glasses of white wine.  Dkt. 56, Ex. B, at 3, 7.

On April 8, 2014, Delta served a document request on Doe.  Dkt. 32, at 2–3.  It included a request for medical records and/or Health Insurance Portability and Accountability Act ("HIPAA")-compliant releases for all providers who prescribed medications Doe was taking on

---

[2] Doe also responded by faulting Delta's conduct of discovery, in particular, its failure to identify the male gate agent, whom Doe claimed had assaulted her.  Pl. Br. 11.  Delta responded that it could not identify any such person, that Doe's recollection of such a person who apparently did not exist was consistent "with Delta's position that [Doe's] mental state was severely impaired on the day of the [i]ncident," and that Delta's inability to identify the agent did not justify Doe's refusal to comply with the orders relating to her medical records.  Def. Reply Br. 5 n.4.  Doe has not since raised any discovery issue about the identification of the gate agent.

[3] Flexeril, a muscle relaxant drug, "may increase the effects of alcohol."  Dkt. 56, Ex. F, at 2.

September 8, 2012.  *Id.*  On May 13, 2014, Doe objected to the request and refused to provide

the medical records, arguing that she had not claimed any physical injury in her lawsuit.  *Id.*  On

May 19, 2014, Delta filed a letter, seeking a conference with the Court to resolve the dispute.  *Id.*

On June 5, 2014, the Court held a telephonic conference with the parties, and ruled on the

dispute.  The Court directed Doe to produce the pharmaceutical and medical records that Delta

sought.  Dkt. 35.  The Court explained:

> [I]t is clear to me that the medical records that Delta is seeking pertaining to [Doe's]
> prescription medications should be produced.  [Doe's] claims in this litigation put
> her health and medical history squarely at issue.  [Doe] claims she was on only one
> medication on the day of the incident and that Delta erroneously prevented her from
> boarding a flight on the ground that she was intoxicated.  Those are [Doe's] claims.
> By making those assertions, [Doe] has fairly opened the door to questions about
> her medication usage, her medical history in general.  These issues also quite rightly
> bear on damages.  In any event, Delta should certainly have the opportunity to
> explore potential defenses to [Doe's] claims arising out of this nucleus of facts or
> to explore their impact on theories of damage.

Dkt. 42, at 6.

On June 9, 2014, the Court issued an order memorializing its rulings during the June 5,

2014 Conference, including its directive to Doe to produce the pharmaceutical and medical

records and releases that Delta sought.  Dkt. 35.

### 2.   July 1, 2014 Order

On June 17, 2014, Doe submitted responses and documents to Delta, pursuant to the

Court's June 9, 2014 Order.  However, she did not provide the requested medical releases, but

instead unilaterally decided to give authorization solely for pharmaceutical records related to one

drug, Flexeril.  Doe also raised new objections to the medical record requests.  Dkt. 38, at 2.  On

June 19, 2014, Delta sent a letter to Doe, seeking complete releases by June 23, 2014.  *Id.*  Doe

did not respond.  On June 24, 2014, Delta submitted a letter, asking the Court to dismiss Doe's

Complaint, under Federal Rule of Civil Procedure 37(b)(2)(A)(v).  *Id.*

On June 24, 2014, the Court issued an order, directing Doe to respond to Delta's request

for dismissal by June 27, 2014.  Dkt. 39.  On June 27, 2014, Doe submitted a letter in response,

claiming that her medical records are privileged and asking for an in-person conference on the

matter.  Dkt. 44.

On July 1, 2014, the Court issued an order, denying Delta's request for dismissal and

Doe's request for an in-person hearing.  Dkt. 45.  The Court noted that it "ha[d] already ruled on

this discovery dispute" in the June 9, 2014 Order; it directed Doe to produce her medical and

pharmaceutical records and releases to defense counsel by the close of business on July 3, 2014.

*Id.*  The Court directed that these materials be reviewed by the defense solely on an attorneys'-

eyes-only basis.  *Id.*

### 3.      July 9, 2014 Order

On July 8, 2014, Doe filed a motion for reconsideration of the Court's order directing her

to produce her medical and pharmaceutical records and releases to Delta, again claiming that

those records were protected by the physician-patient privilege.  Dkt. 49, 50.

In an order issued on July 9, 2014, the Court denied Doe's motion for reconsideration,

noting that it had already ruled on this issue twice:  First, on June 9, 2014, when it denied Doe's

motion to quash and directed Doe to produce the requested records, Dkt. 35; and second, on July

1, 2014, when it denied Doe's request for a hearing regarding those same records, Dkt. 45.  Dkt.

51, at 1.  The Court also noted that Doe had failed to produce the records "in blatant

contravention of two court orders."  *Id.*  The Court stated that there was "no basis for the Court

to reconsider its rulings."  *Id.*  The Court directed Doe forthwith to produce the records in

question to defense counsel, and notified Doe that "[i]f the records [were] not produced by the close of business on Monday, July 15, 2014, the Court [would] entertain a motion for appropriate relief, including sanctions." *Id.*

### 4.     July 23, 2014 Order

On July 22, 2014, Doe, still without producing the records, filed a request for certification of the Court's prior orders for an interlocutory appeal, pursuant to 28 U.S.C. § 1292(b).  Dkt. 53, 54.  The same day, Delta filed the pending motion for sanctions to dismiss Doe's Complaint, on account of her failure to comply with the Court's orders.  Delta also opposed Doe's request for certification, and sought an award of attorney's fees and costs to Delta, under Rule 37(b)(2)(C). Def. Br. 13–14.

On July 23, 2014, the Court issued an order denying Doe's request for certification of an interlocutory appeal.  Dkt. 58, at 1.  The Court noted that its order was "a routine discovery order requiring the production of medical records, as to which the controlling law is clear."  Dkt. 58, at 2 (citing *Alden v. Time Warner, Inc.*, No. 94 Civ. 6109 (JFK), 1995 WL 679238, at *3 (S.D.N.Y. Nov. 14, 1995) (doctor-patient privilege waived where plaintiff put medical condition at issue)). The Court also noted that staying the litigation for an interlocutory appeal, with discovery ongoing, would materially delay resolution of the case.  *Id.* at 2–3.

The Court again directed Doe to produce the records in question to defense counsel "immediately," and noted that "[i]f the records are not produced by the close of business on Monday, July 28, 2014, the Court [would] entertain a motion for appropriate relief, including sanctions."  *Id.* at 3.  The Court again emphasized that the materials would be reviewable by the defense on an attorneys'-eyes-only basis.  *Id.*

### 5.       September 16, 2014 Order

On July 29, 2014, Delta wrote the Court, reporting that Doe, in violation of the Court's orders, still had not produced the requested medical records. Dkt. 59. The same day, Doe's counsel filed a letter, seeking a two-day extension to produce Doe's signed releases for medical and pharmaceutical records, Dkt. 60; Doe's counsel also filed a brief opposing Delta's motion for sanctions, Pl. Br. 4. On July 31, 2014, Delta filed a reply. Def. Reply. Br.

On August 1, 2014, Doe's counsel submitted a letter, asking that its July 29, 2014 letter, seeking a two-day extension to produce the medical records, be withdrawn, because he had "contacted [Delta] with a proposed method to exchange the required information." Dkt. 65. On August 4, 2014, Delta filed a response, emphasizing that it had "**not** reached any agreement with [Doe] regarding the production of records." Dkt. 66 (emphases in original).

On September 4, 2014, Delta submitted a letter, requesting a pre-motion conference in anticipation of its filing a motion for summary judgment. Dkt. 67. Delta noted that Doe still had "not provided any of the requested records or authorizations." *Id.* at 2. On September 8, 2014, Doe's counsel filed a letter response, stating that her attorneys had "attempted in good faith to negotiate a process with [Delta] for the confidential production of [Doe's] medical records which has been unsuccessful." Dkt. 68, at 2. Doe's counsel asked that the Court provide guidance on this issue at the status conference. *Id.* On September 11, 2014, Delta filed a reply, noting that Doe had done no more than "on[ce] suggest[] that her counsel receive the documents directly from the medical providers and then later produce the records to Delta." Dkt. 69, at 1. Delta stated that it had rejected this suggestion because it "would allow her counsel to prescreen the requested records at their office prior to production." *Id.*

On September 12, 2014, the Court held an in-person conference regarding Doe's repeated failure to comply with the Court's four prior orders (of June 9, 2014; July 1, 2014; July 9, 2014; and July 23, 2014) directing her to produce her medical and pharmaceutical records and releases to Delta, subject to an attorneys'-eyes-only condition.  Dkt. 71.  Doe's counsel was present; Doe was not.

Questioned by the Court, Doe's counsel acknowledged that, in his view, Doe was obliged to follow the Court's orders.  Doe's counsel stated that he did not know any bona fide reason for his client not to produce the records and releases.  Doe's counsel stated that Doe had withheld the records and releases because Doe personally disagreed with the Court's rulings.  *Id.* at 7–8. Doe's counsel acknowledged that Doe understood that the Court had repeatedly ordered that these materials be produced and that the Court had warned her that sanctions could be imposed for her failure to produce them.  *Id.* at 8–9.[4]

---

[4] The following excerpt of the September 12, 2014 conference is revealing:

> **The Court**: Yes or no; have you now produced the medical records and authorizations?
> **Mr. Brauchle [Doe's counsel]**:  No.
> **The Court**:  Do you have a reason for not doing so independent of your disagreement with my direction that those be produced?
> **Mr. Brauchle**:  The client has not signed.
> **The Court**:  Okay.  Why has the client not signed those?
> **Mr. Brauchle**:  She disagrees with your ruling.
> **The Court**:  Okay.  I've had clients too.  To be very clear, is the issue here that you believe your client is obliged to follow my discovery ruling but your client is declining to do so?
> **Mr. Brauchle**:  That's correct, your Honor. . . .
> **The Court**:  Does your client understand that I have repeatedly ordered that these materials be produced?
> **Mr. Brauchle**:  Yes, your Honor.
> **The Court**:  And have you advised your client that the court has indicated that it would impose sanctions for failure to produce these materials?
> **Mr. Brauchle**:  Yes, your Honor, and I think—

During the conference, the Court directed Doe, through counsel, to produce the requested records and releases to Delta no later than September 26, 2014.  The Court warned Doe's counsel that, if Doe failed to produce the records and releases by that date, her case would be dismissed with prejudice.  Dkt. 70.

Specifically, the Court stated:

> I want to give you and your client one more opportunity, and I want to be very explicit that at this point if you do not fully comply with the discovery order by the deadline I'm going to set, I will dismiss the case with prejudice and I will impose sanctions to the extent of demonstrated costs imposed on the other side for the failure to comply.

Dkt. 71, at 7.

The Court also directed Doe's counsel to serve on Doe the written order it stated it would issue memorializing the Court's rulings, and to file on ECF a sworn affidavit attesting that the order had been so served.  Dkt. 70.  The Court also directed the parties to submit a joint letter by October 1, 2014, stating whether Doe had complied with the Court's orders.  Dkt. 70.

The Court issued such an order on September 16, 2014.  The order "directed [Doe] to produce the aforementioned records and releases to defendant no later than September 26, 2014, and warned that, if she fails to produce the records and releases by that date, her case will be dismissed with prejudice."  Dkt. 70.

---

**The Court**:  Have you advised your client as well that if the materials are not produced, the case may be dismissed?
**Mr. Brauchle**:  Yes. . . .
**The Court**:  Beyond your client's disagreement with my order, are you aware of any reason that the materials can't be produced timely?
**Mr. Brauchle**:  No.  It's just a matter of her signing an authorization.

Dkt. 71, at 7–9.

On September 30, 2014, Doe's counsel filed an affidavit, confirming that he had served the September 16, 2014 Order on Doe and that he had spoken to her and confirmed her receipt of the order.  Dkt. 73.

### 6.    October 7, 2014 Order and Aftermath

On October 1, 2014, the parties submitted a joint letter.  Dkt. 74.  Doe represented that she had, finally, complied with the Court's order, *id.* at 2; Delta, however, stated that Doe had not fully complied, in that a release for one pharmacy was missing, *id.* at 2–4; Dkt. 75.

On October 7, 2014, the Court issued an order, noting that "although [Doe] has now partially complied with her duties to provide medical authorizations, she has not yet done so completely or satisfactorily."  Dkt. 76.  The Court directed Doe, by October 14, 2014, "(1) to provide **original and complete** authorizations for **all** providers to defense counsel, and (2) as to CVS Pharmacy, to provide a corresponding address for that failure."  *Id.* (emphasis in original). The Court further noted that because of Doe's "longstanding failure to comply with the Court's orders as to medical authorizations, if such authorizations [were] not provided by close of business on that date, the Court [would] be compelled to dismiss this case."  *Id.*  The Court added that it would entertain any application with respect to costs and fees at a later stage.  *Id.*

On October 31, 2014, Delta's counsel submitted a letter, seeking an extension of all deadlines because Doe had not timely produced medical release forms in a form acceptable to at least one medical provider.  Dkt. 77.  On November 10, 2014, the Court granted Delta's request to extend pending deadlines, recognizing that the delays in this case had been caused by Doe, not Delta.  Dkt. 78, at 1.  In the November 10, 2014 Order, the Court also noted that on November 4, 2014, defense counsel had notified chambers that on November 3, 2014, Doe had delivered the outstanding medical record release.  *Id.*

On February 3, 2015, the Court directed defense counsel to submit a letter by February 6, 2015, confirming that the medical releases were received.  Dkt. 82.  On February 4, 2015, defense counsel notified the Court that Delta had received from Doe all requested medical authorizations.  Dkt. 83.

## II.    Applicable Legal Standards

Pending before the Court is Delta's motion for sanctions, including dismissal of the case. Federal Rule of Civil Procedure 37 allows a court to impose sanctions for discovery-related abuses, and gives the court "broad discretion in fashioning an appropriate sanction."  *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101 (2d Cir. 2002).

In determining the appropriate sanction to impose under Rule 37, courts weigh several factors.  These include "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance."  *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302–03 (2d Cir. 2009) (citing *Nieves v. City of New York*, 208 F.R.D. 531, 535 (2d Cir. 2002)).  A court, in imposing sanctions, may order "the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

## III.    Discussion

Delta argues that Doe's Complaint should be dismissed because of Doe's "repeated contumacious conduct and blatant disregard of the Court's multiple discovery Orders."  Def. Br. 1.  Delta further argues that Doe's non-compliance is "most egregious" because Doe herself is a member of the New York Bar, and because her failure to comply with the discovery orders

prevented Delta from adequately preparing its defense. *Id.* Delta also asks that the Court award attorney's fees and costs, dating to the inception of this action, pursuant to Rule 37(b)(2)(C). *Id.* at 13. Doe counters that, in failing to comply, she did not act in bad faith but "merely asserted her rights and objections pursuant to the law and procedure of this court." Pl. Br. 4.

Doe is simply wrong. It took the Court six written orders directing Doe to produce her medical records and authorizations for her to do so. And the Court, in four of those orders, warned Doe that, if she failed to comply, the Court would impose sanctions. Notwithstanding the Court's blunt warnings, Doe flouted those orders. And as her counsel eventually admitted, Doe lacked any basis to do so, save her own subjective view that the orders were wrong-headed. Sanctions are plainly merited here in light of Doe's stark, persistent, and unjustified disobedience.

The question for the Court is therefore not whether sanctions are merited here, but what sanctions to impose under Rule 37: Under the *Agiwal* factors, is dismissal of the Complaint warranted? Or will a lesser sanction, keyed to the fees and costs that Doe's derelict conduct imposed on Delta, suffice? Although the issue presents a close question, on balance, the Court holds that the *Agiwal* factors support imposition of monetary relief, but not the ultimate sanction of dismissal. The Court considers these factors in turn.

### A.     Willfulness

"Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors beyond the party's control." *In re Fosamax Prods. Liab. Litig.*, No. 06 MD 1789 (JFK), 2013 WL 1176061, at *2 (S.D.N.Y. Mar. 21, 2013) (citation omitted). Willful non-compliance is routinely found, for instance, where a party has "repeatedly failed to . . . produce

documents . . . in violation of the district court's orders." *Robertson v. Dowbenko*, 443 F. App'x 659, 661 (2d Cir. 2011) (summary order); *see also, e.g.*, *Battiste-Downie v. Covenant House*, 471 F. App'x 78, 79 (2d Cir. 2012) (summary order) (willfulness found where plaintiff "repeatedly defied discovery orders, despite the District Court's explicit instructions on several occasions that she was to respond to specific discovery demands propounded by defendants or face sanctions"); *Embuscado v. DC Comics*, 347 F. App'x 700, 701 (2d Cir. 2009) (summary order) (willfulness found where plaintiff "violated a series of court orders requiring the production of documents").

Here, it is unavoidable that Doe willfully failed to comply with the Court's discovery orders directing her to produce medical and pharmaceutical records and releases.  The Court issued *six* such orders and conducted two conferences with counsel, directing Doe, each time, to produce the requested materials, under confidentiality conditions designed to protect her privacy interests.  And as Doe's counsel eventually acknowledged, counsel himself agreed that Doe was obliged to produce the materials and had no basis to withhold them, and that Doe's only basis for not complying was her disagreement with the Court's rulings.  Doe's counsel also confirmed that he had informed Doe of the Court's repeated orders and of the prospect of sanctions for non-compliance.

Doe counters that, in not complying with the Court's orders, she was asserting her rights under the physician-patient privilege.  Pl. Br. 8–9.  But the Court, during the June 5, 2014 conference, addressed and rejected that claim on the merits, finding that Doe's allegations in this case and the circumstances to which she testified in her deposition had "fairly opened the door to questions about her medication usage, her medical history in general."  Dkt. 42, at 6.  Doe also raised this same argument in her motion for reconsideration, Dkt. 49, 50, which the Court denied,

noting that the Court had already ruled on this issue twice, and that there was "no basis for the Court to reconsider its rulings," Dkt. 51, at 1.

Doe alternatively states that she was "leery" of producing her medical records because, at some point after she divulged her social security number and credit card statements in discovery, she had suffered two incidents of financial fraud.  Pl. Br. 10.  But these unfortunate incidents are entirely beside the point.  They do not justify non-compliance with the Court's order to produce medical records.  And the Court's directive that only Delta's counsel could see these records effectively eliminated any realistic chance of mischief, as the Court noted during the September 12, 2014 Conference.  Dkt. 71, at 10–12.  Doe was also at liberty to ask—as the Court eventually *sua sponte* directed—that any court papers that referred to or reflected upon any of the materials produced as attorney's-eyes-only be filed under seal.  *Id.* at 11–12.

Accordingly, the Court finds Doe's failure to comply with the Court's six discovery orders extremely willful.  This factor favors a significant sanction.

### B.     Efficacy of Lesser Sanctions

In evaluating the appropriateness of particular sanctions, "a court should always seek to impose the least harsh sanction that will remedy the discovery violation and deter such conduct in the future." *Silva v. Cofresi*, No. 13 Civ. 3200 (CM) (JCF), 2014 WL 3809095, at *3 (S.D.N.Y. Aug. 1, 2014) (declining to grant terminating sanctions where defendant willfully failed to comply with a court order but later responded, though dilatorily, to discovery requests).  At the same time, "deliberate and persistent noncompliance" may render "lesser sanctions inappropriate," *Embuscado*, 347 F. App'x at 701, and a "district court is 'not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record,'" *Shcherbakovskiy v. Seitz*, 450 F. App'x 87, 88 (2d Cir. 2011) (summary

order) (citation omitted).  "Were we to adopt a position that overly inhibits the imposition of the harsher sanctions authorized by Rule 37, we would turn the rule into a 'paper tiger.'"  *Sieck v. Russo*, 869 F.2d 131, 134 (2d Cir. 1989) (internal citation omitted); *see also Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979) ("[I]n this day of burgeoning, costly and protracted litigation courts should not shrink from imposing harsh sanctions where, as in this case, they are clearly warranted.").  "Even the most severe Rule 37 sanctions may be imposed . . . so long as a warning has been given that noncompliance can result in a sanction."  *S.E.C. v. Setteducate*, 419 F. App'x 23, 24 (2d Cir. 2011) (summary order); *see also, e.g.*, *Battiste-Downie*, 471 F. App'x at 79 ("[T]he efficacy of lesser sanctions to correct such behavior is doubtful, given that Battiste-Downie refused to respond to the discovery demands even after being ordered repeatedly by the District Court to do so.").

This factor, in the Court's judgment, favors imposition of monetary sanctions but not of dismissal.  On considered review, the Court concludes that Delta's ability to defend against Doe's claims has *not* been compromised by Doe's discovery lapses.  Delta argues that Doe's failure to produce the requested information severely prejudiced Delta in the defense of this case.  Def. Br. 11.  Before Doe finally complied with the Court's orders, this representation was likely correct.  At present, however, it is no longer so because Doe has now produced the requested records and releases, and Delta has not pointed to any gap in these records.  Delta also has the ability—although to date it has not sought this relief—to seek to re-open Doe's deposition to question her on medical records that it subsequently received.

Further, the Court is also unpersuaded that lesser sanctions than dismissal will be ineffectual.  Doe has not previously been sanctioned.  The Court is reluctant to impose the ultimate sanction of dismissal, for it "would be inappropriate to assume that a sanction less

severe than dismissal of the complaint would be insufficient to obtain future compliance with court orders." *Sang Lan v. Time Warner, Inc.*, No. 11 Civ. 2870 (AT) (JCF), 2015 WL 480378, at *3 (S.D.N.Y. Feb. 5, 2015).  And monetary sanctions here may well prove significant.  It is appropriate that Doe bear the incremental cost, in the form of attorney's fees and costs, visited upon on Delta as a result of Doe's longstanding refusal to comply with the Court's orders.  Such a monetary sanction, when visited on an individual plaintiff, cannot be discounted as meek.

In sum, given Doe's cure (albeit belated) of her discovery failures, the fact that her non-compliance with the Court's orders does not follow an earlier sanction in this case, and the fact that a monetary sanction here is likely to be experienced as meaningful by Doe, the Court finds, as to this factor, that dismissal of her Complaint is not warranted.  Instead, the Court finds that monetary sanctions are better tailored relief.

## C.    Duration of Noncompliance

In determining an appropriate sanction, courts also consider the duration of a party's non-compliance, and have found noncompliance for a period of several months sufficient to warrant dismissal or default.  *See, e.g.*, *Embuscado*, 347 F. App'x at 701 (dismissal after three months of non-compliance); *Phelan v. Cambell*, 507 F. App'x 14, 16 (2d Cir. 2013) (summary order), *cert. denied*, 134 S. Ct. 144 (2013) (dismissal after seven months of non-compliance); *Battiste-Downie*, 471 F. App'x at 79 (dismissal after year of noncompliance).

This factor favors a substantial sanction.  On June 9, 2014, the Court issued its first order directing Doe to produce the requested medical records, Dkt. 35.  It took Doe nearly five months (and five further court orders) before Doe fully delivered the medical records and authorizations in question.  Dkt. 78.  As noted, the Second Circuit has found such a period sufficiently long to justify dismissal of a complaint.

### D.    Notice of Possible Sanctions

"Finally, severe sanctions like dismissal or default should be imposed only if the party has been warned that such a sanction will follow from continued non-compliance and has nevertheless refused to comply." *Urbont v. Sony Music Ent.*, No. 11 Civ. 4516 (NRB), 2014 WL 6433347, at *3 (S.D.N.Y. Nov. 6, 2014); *see also*, *e.g.*, *Manigaulte v. C.W. Post of Long Island Univ.*, 533 F. App'x 4, 6–7 (2d Cir. 2013) (summary order), *cert. denied*, 134 S. Ct. 1036 (2014) (dismissal appropriate where district court twice warned dismissal would follow from non-appearance at deposition); *Murray v. Mitsubishi Motors of N. Am., Inc.*, 462 F. App'x 88, 90 (2d Cir. 2012) (summary order) (dismissal appropriate where plaintiff "continued to ignore the court's orders despite the court's warning on February 10, 2010 that further noncompliance could result in dismissal of the action").

Here, there can be no doubt that Doe received sufficient notice.  On July 9, 2014, the Court notified Doe for the first time that if she failed to produce the requested records by July 15, 2014, "the Court [would] entertain a motion for appropriate relief, including sanctions."  Dkt. 51, at 1.  On July 23, 2014, the Court notified Doe that if the records were not produced by July 28, 2014, "the Court [would] entertain a motion for appropriate relief, including sanctions."  Dkt. 58, at 1, 3.  On September 14, 2014, the Court stated that if Doe did not fully comply with the discovery orders, it would "dismiss the case with prejudice and impose sanctions to the extent of demonstrated costs imposed on the other side for the failure to comply."  Dkt. 71, at 7.  And on October 7, 2014, the Court warned that because of Doe's "longstanding failure to comply with the Court's orders," the Court would "be compelled to dismiss this case" if she did not complete production of the requested items by October 14, 2014.  Dkt. 76.

Given the Court's frequent warnings to Doe of sanctions for noncompliance, this factor favors imposing sanctions. At the same time, because the Court did not specify the prospect of dismissal until September 2014, this factor less strongly favors that sanction than it does lesser, monetary sanctions.

### E.  Appropriate Sanctions:  Overall Assessment

In fashioning the appropriate sanction here, the Court draws helpful guidance from Federal Rule of Civil Procedure 37(b)(2)(C). It provides that, when a party fails to comply with a court order to provide discovery, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by that failure." Fed. R. Civ. P. 37(b)(2)(C). "This cost-shifting is mandatory 'unless the failure was substantially justified or other circumstances make an award of expenses unjust.'" *Sang Lan*, 2015 WL 480378, at *3 (citing Fed. R. Civ. P. 37(b)(2)(C)); *see also Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 178 (2d Cir. 2008) (per curiam) (Rule 37(b)(2) "certainly suggests that an award of expenses is mandatory unless one of the two exceptions—substantial justification or other circumstances—applies.").

The circumstance described by Rule 37(b)(2)—willful failure to comply with a discovery order—is, in the Court's view, precisely the one for which Doe is accountable here. And neither exception in the Rule shelters Doe from the Rule's otherwise mandatory monetary sanction. A party's conduct is substantially justified if "there was genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." *Klein v. Torrey Point Group, LLC*, 979 F. Supp. 2d 417, 442 (S.D.N.Y. 2013) (citation and internal quotation marks omitted). "The noncompliant party bears the burden of showing that [her] failure to comply was justified or that an award of expenses would be unjust." *Sang Lan*, 2015 WL 480378, at *4.

19

Here, for the reasons previously addressed, Doe has no basis to claim justification (let alone a substantial justification) for her non-compliance.  Nor has she persuasively articulated any basis on which imposition of a monetary sanction would be unjust.[5]  On the contrary, the sanction the Court has in mind would be eminently just because it will be measured solely by the incremental costs that her noncompliance visited on Delta, her adversary—costs that Delta would not have experienced had Doe complied with the Court's initial (June 9, 2014) order.  Put differently, the monetary sanctions the Court will impose will not be measured by punitive principles, but by principles of just compensation to put Doe's aggrieved adversary in the monetary position it would have been in but for Doe's non-compliance.  *See Argo Marin Sys., Inc. v. Camar Corp.*, 755 F.2d 1006, 1015 (2d Cir. 1985) ("It is clear that the plaintiff, without justification, failed to disclose to the defendant material covered by the district court's discovery order and that such nondisclosure caused the defendant to bear costs which would not have been necessary had plaintiff complied with the court's order.  Accordingly, the trial court's imposition of monetary sanctions was proper.").

The Court has given thoughtful attention to whether such monetary sanctions are sufficient.  As noted, there are factors pointing in each direction, and the Court regards the question as a close one.  And the Court is confident it has the discretion to impose terminating sanctions here, under the *Agiwal* factors.

In the end, however, the Court's judgment is that it is not necessary to take the ultimate step of imposing terminating sanctions.  Apart from the factors addressed above that point towards a lesser sanction, the Court's desire is that this case be resolved, if possible, on the

---

[5] Doe argues that because her actions "have not been willful or a blatant disregard of the Court's orders, attorney fees are not appropriate."  Pl. Br. 11.  But the Court has found Doe's failure to comply with the Court's six discovery orders willful.  *See* pp. 14–15.

merits.  *See Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995) (recognizing that "dismissal is a harsh remedy to be utilized only in extreme situations" and expressing "its preference that litigation disputes be resolved on the merits, not by default") (internal quotation marks and citation omitted); *see also Marfia v. T.C. Ziraat Bankasi, N.Y. Branch*, 100 F.3d 243, 249 (2d Cir. 1996); *Timmons v. Lyons*, No. 98 Civ. 4714 (DAB) (THK), 2011 WL 7630632, at *2 (S.D.N.Y. Oct. 5, 2011); *John Wiley & Sons, Inc. v. Elhalis*, No. 05 Civ. 2979 (DAB) (RLE), 2006 WL 406311, at *3 (S.D.N.Y. Feb. 14, 2006).  Whether or not Doe has a viable claim against Delta on the merits remains, of course, to be seen.  But if Doe does, in fact, have a viable claim, the outcome the Court reaches today permits Doe to vindicate it.  Doe is admonished, however, that, in light of her regrettable track record in this case, any further non-compliance with deadlines and Court orders in this case—including the Court's order here to pay Delta monetary sanctions—is apt to be held to be cause for imposing terminating sanctions.

The Court, accordingly, imposes monetary sanctions on Doe as follows:  Doe is to pay to its adversary, Delta, a sum equal to the total of all documented and reasonable fees and costs that Delta incurred obtaining Doe's medical records and releases from the point of Doe's initial non-compliance.  For avoidance of doubt, those fees and costs are to be measured from the point at which the Court's order of June 9, 2014 issued, through the point at which Doe fully complied with the discovery demands at issue.  These fees and costs are not to include fees and costs attributable to other work or projects on the case or that would have been incurred even if Doe had promptly complied with the June 9, 2014 order.

Within 14 days of this Opinion and Order, *i.e.*, by Wednesday, March 11, 2015, Delta's counsel is directed to file an affidavit setting forth, with specificity, the basis for its request for attorney's fees and costs, along with appropriate documentation.  *See N.Y. State Ass'n for*

*Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983); *Sang Lan*, 2015 WL 480378, at *4. Should Doe oppose any aspect of Delta's request, Doe is directed to submit, by Wednesday, March 18, 2015, an opposition, also identifying with specificity the particular fees or costs to which she objects and stating, with specificity, why. The Court will treat failure by Doe to submit an opposition by that date, or the submission by Doe of only a generalized opposition without particularized attention to specific fee or cost line-items, as non-opposition to Delta's submission. Should Delta wish to submit a reply to a timely opposition by Doe, Delta's reply is due Monday, March 23, 2015.

## CONCLUSION

For the foregoing reasons, Delta's motion for Rule 37 sanctions is granted with respect to monetary sanctions and denied with respect to terminating sanctions. The schedule for the parties' submissions as to such monetary sanctions is as set forth herein.

The Clerk is directed to terminate the motion pending at docket number 55.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: February 25, 2015
New York, New York

22